*E-FILED 8/6/07*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JOHN KESSLER, ADMINISTRATOR OF THE ESTATE OF RUTH FOUND HAKWINS,

    Plaintiff,

  v.

UNITED STATES OF AMERICA,

    Defendant.

NO. C 06-07492 RS

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

In a complex probate court proceeding, the named beneficiaries to two competing wills agreed to settle their disputes. The probate court approved the settlement agreement, which, among other things, called for all of the attorney fees incurred by the various parties to be charged to the estate as administrative expenses. The estate then applied to the Internal Revenue Service for a tax refund based on the contention that the fees were deductible estate expenses. The IRS denied the claim and this action followed.

The IRS now moves for summary judgment, contending that as a matter of law the attorney fees were not properly charged to the estate, and therefore were not deductible. Although the IRS has shown that there was no apparent basis under California law to charge to the estate the fees incurred by some of the parties, it has failed to make the requisite showing for summary judgment that none of the fees were properly claimed as estate expenses. Accordingly, the motion will be denied.

## II.  BACKGROUND

The following facts are not in substantial dispute:

Ruth Found Hawkins died on November 14, 2001.  Her husband had predeceased her. Hawkins' only surviving blood relative was Robert Ross, a first cousin.  Robert[1] was named as the executor and a one-third beneficiary under a will Hawkins executed in 1994.  Other beneficiaries under the 1994 will included Margaret Hawkins Dieffenbach and Herbert Hawkins, who were children from a previous marriage of Hawkins' deceased husband.  The 1994 will also made substantial bequests to Katherine Hawkins Humphreys and Christopher Hawkins, who were grandchildren of Hawkins's deceased husband through the prior marriage (hereinafter "the grandchildren").

In 2000, Hawkins executed another will that altered the distribution of her estate as follows: one third to Margaret, one third to Herbert, one sixth to each of the two grandchildren, and $1,000 to Robert.  The 2000 will named Margaret as the executor of the estate.

After Hawkins' death, Margaret filed a petition to probate the 2000 will.  Robert subsequently challenged the 2000 will, and filed a separate petition to admit the 1994 will to probate. In addition, Robert submitted a petition alleging that Margaret had engaged in financial abuse of an elder and other claims.  Herbert then filed a will contest maintaining that the 1994 will was procured by undue influence and was invalid.  The Santa Clara County Superior Court consolidated these various matters.   The Superior Court then held a bench trial on the claims brought by Robert, pursuant to a bifurcation order postponing consideration of the other issues.

After approximately a two week trial, the Superior Court issued a tentative decision that Hawkins lacked testamentary capacity from and after 1999, and that the 2000 will was therefore invalid.  In the tentative decision, the court noted it found no fault with Margaret's decision to seek probate of the 2000 will, as she had not been aware of Hawkins' lack of testamentary capacity.  The

---

[1] As is customary in cases involving numerous family members some of whom have the same or similar surnames, the Court uses given names for clarity and convenience, intending no disrespect.

2

court further concluded that any undue influence by Margaret was subtle and non-egregious and did not amount to financial abuse of an elder. The tentative decision also rejected Robert's claims of intentional interference with an economic relationship.

Prior to the trial of the remaining issues, i.e. Robert's petition to probate the 1994 will and Herbert's contest thereof, Robert, Margaret, Herbert, the grandchildren, and Hawkins' conservator reached a settlement agreement. The settlement was approved by the court in a stipulated order on August 26, 2003. The settlement provided that John Kessler would be designated the administrator of the estate, $19,000 would be distributed to various charities, Robert would receive 30% of the residue, Margaret and Herbert would share 36.67% of the residue, and the grandchildren would share the remaining 33.33%. The stipulated order recited that the administration of the estate had been extremely complex, that substantial legal services had been performed on behalf of the estate, which were for the benefit of, and were necessary to, the administration of the estate, that the litigation expenses and attorney fees were properly payable out of the estate, and that, accordingly, Kessler should file an amended federal tax return deducting the attorney fees and costs as an estate administration expense.

The stipulation specifically provided that each beneficiary's share of the estate would be reduced by the following deductions:

| | |
|---|---|
| Robert's Attorney Fees | $726,023.00 |
| Robert's Litigation Costs | $ 28,947.00 |
| Margaret and Herbert's Attorney Fees | $120,000.00 |
| Grandchildren's Attorney Fees | $ 28,102.00 |
| Total | $903,072.00 |

The stipulation also provided that once the administrator filed the amended federal estate tax return, deducting the litigation costs and attorney fees as expenses of administration, the refund would be distributed 83.6% to Robert, 13.3% to Margaret and Herbert, and 3.1% each to the two grandchildren.

Pursuant to the stipulated order entered by the court, Kessler filed an amended federal estate

3

1  tax return claiming a refund in the total amount of $529,103.00. On or about November 21, 2006,
2  the Service issued its notice of determination and Report of Estate Tax Examination Changes that
3  allowed $134,511.23 and disallowed $394,618.77 of the claim. The disallowed portion of the claim
4  for refund primarily related to the attorney fees charged to the estate. The IRS found that those fees
5  were not reasonable, not allowable by state law, and not necessarily incurred for the benefit of the
6  administration of the estate.

### III. STANDARDS

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-324 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of his case with respect to which he bears the burden of proof at trial. *Id.* at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, i.e., "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

4

1  The court must draw all reasonable inferences in favor of the non-moving party, including
2  questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker*
3  *Magazine, Inc.*, 111 S.Ct. 2419, 2434-35 (1991) (citing *Anderson*, 477 U.S. at 255); *Matsushita*
4  *Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986); *T.W. Elec. Service v. Pacific Elec.*
5  *Contractors*, 809 F.2d 626, 630 (9th Cir. 1987).  It is the court's responsibility "to determine
6  whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background
7  or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor
8  based on that evidence." *T.W. Elec. Service*, 809 F.2d at 631.  "[S]ummary judgment will not lie if
9  the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury
10  could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  However, "[w]here the
11  record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there
12  is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

13  Here, Kessler contends there are substantial material issues, particularly if the *reasonableness*
14  of the fees incurred by Robert is relevant.  As noted above, however, there is no dispute as to the
15  facts summarized in the preceding section; thus the primary question presented by this motion is
16  whether, on those facts, the IRS "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

17
18  IV.  DISCUSSION

19  Under Internal Revenue Code section 2053 (a), deductions are allowable for "administration
20  expenses" of an estate that are "are allowable by the laws of the jurisdiction . . . under which the
21  estate is being administered."  Applicable Treasury Regulations further provide that to be deductible,
22  administrative expenses must also be "reasonable in amount" and "appropriate or necessary to
23  settlement of an estate generally."  Rev. Rul. 74-509, 4-5.  The regulations further explain that, "the
24  Federal law requirement is met where the court costs or attorney's fees are incurred in serving
25  significant purposes in the collection, conservation, or effectuation of the just distribution of the
26  assets of the estate according to law." *Id.*

27  Thus, analysis of the deductibility of claimed estate administrative expenses is a two-step
28  process.  First, state law rules as to what types of expenses may be charged to the estate establish a

5

minimum threshold that must be satisfied. Then, in the event that Federal law imposes additional requirements, those too must be satisfied. See *Hibernia v. United States*, 581 F.2d 741, 745 (9th Cir. 1978) ("[E]ven though an expenditure of estate funds is permitted by state law, it must in fact be an 'administration expense' as contemplated by section 2053(a)(2) to be deductible as such.")

Here, the IRS contends that California state law does *not* allow attorney fees incurred by beneficiaries in litigation such as took place here to be charged to the estate, notwithstanding the fact that the probate court entered a stipulated order to that precise effect. Kessler's response is two-fold. First, he points to treasury regulations providing that a state court decision sanctioning a charge against an estate will "ordinarily be accepted as establishing the validity and amount of the claim." Treas. Reg. § 20.2053-1 (b)(2). As Kessler points out, that regulation applies even to consent orders in appropriate circumstances. *Id.* Kessler, however, overlooks the caveat that "[t]he decree will not be accepted if it is at variance with the law of the State." *Id.* Thus, Kessler's reliance on Regulation 20.2053-1 (b)(2) begs the question. Deference to the probate court's order might be appropriate as to the "validity and amount of the claim" as a general matter, but it remains to be decided whether that order was consistent with state law.

Kessler's second argument is that California law in fact permits the fees at issue here to be charged to the estate. The fees were incurred by, (1) Robert, the executor under the 1994 will; (2) Margaret, the executor under the 2000 will that was tentatively declared invalid, and; (3) Herbert and the grandchildren, who were only beneficiaries under both wills. The IRS argues that California law permits attorney fees to be charged to an estate only when incurred by an executor or personal representative, and even then only under certain circumstances.[2]

The IRS is correct that the California Probate Code expressly provides only for payment by the

---

[2] Kessler's opposition characterizes the IRS as contending that fees are chargeable to the estate only when incurred by "the appointed personal representative, as opposed to the executor[]." Opposition at 9:20-23. The IRS, however, does not draw a distinction between executors and personal representatives. It appears that Kessler may have inadvertently referred to executors and that he intended to state, "as opposed to beneficiaries." Under California law an "executor" is one type of "personal representative." Cal Prob. Code § 58 (a).

6

estate of attorney fees incurred by a personal representative. See Cal. Prob. Code §§ 10810 *et seq.*[3] Although the Code allows for the recovery of fees in excess of the statutory schedule when "extraordinary services" have been provided, those fees also are only such fees as have been incurred "by the attorney for the personal representative." Cal. Prob. Code §§ 10811. The IRS acknowledges that California cases have sometimes permitted beneficiaries to recover attorney fees from the estate under the "common fund doctrine." See *In re Marre's Estate*, 18 Cal.2d 191, 192 (1941) ("[P]laintiffs who have succeeded in protecting, preserving or increasing a fund for the benefit of themselves and others may be awarded compensation from the fund for the services of their attorneys.") The IRS, however, rejects the applicability of doctrine here because the litigation did not involve preserving or increasing estate assets, and Kessler does not argue to the contrary.[4]

Thus, neither the statutory scheme nor common fund doctrine serves as a basis under California law to permit the fees of Herbert and the grandchildren to be charged to the estate, as they undisputedly were not personal representatives under either will. Kessler suggests those fees (and those of Margaret and Robert) were nonetheless appropriately charged to the estate because the entire litigation was "essential to the proper administration of the estate." The condition that the fees be essential to the estate administration is an *additional* requirement of Federal law that applies in determining deductibility, it is not a *substitute* for the threshold requirement that the fees be allowable as estate expenses under state law. See Rev. Rul. 74-509, 4-5. Thus, as persuasive a case as Kessler may make that it was necessary to resolve issues such as which will governed before the estate could be administered, those arguments would serve only to support deductibility of the fees *if* they were properly allowable as administrative expenses of the estate under California law in the first instance.

For a similar reason, Kessler's reliance on cases such as *Dulles v. Johnson*, 273 F.2d 362 (2nd

---

[3] Kessler's assertion that the IRS offered "no law or evidence to support its position" is inaccurate. The IRS cited the relevant Probate Code provisions.

[4] In actuality, one aspect of Robert's claims *did* seek to increase the estate–his claims of elder abuse, if successful, would have resulted in a recovery for the estate. There is no evidence, however, that any other beneficiaries incurred fees in *support* of that claim–indeed at least Margaret presumably defended *against* it. Even as to Robert, the common fund doctrine cannot support his right to fees expended in making that claim because it was not successful.

7

Cir. 1959) and *Estate of Swayne*, 43 T.C. 190 (1964) is unavailing.  In those cases, there was no question that the underlying state statutes (non-California) expressly permitted recovery from the estate of the kind of attorney fees in issue.  See *Swayne* 43 T.C. at 197-198 (holding that the executor under a will that ultimately was not admitted to probate was entitled to recover his fees from the estate given Sec. 45-185 of the General Statutes of Connecticut that provided, in relevant part, "[t]he court of probate . . . shall allow to the executor his just and reasonable expenses in defending the will . . . whether or not the will is admitted to probate."); *Dulles*, 273 F. 2d at 369 (holding beneficiaries entitled to recover fees from estate under N.Y. Surrogate's Court Act, § 278.[5])

    Putting aside for a moment the question of fees incurred by Robert and Margaret, all Kessler is left with in support of his contention that the fees of Herbert and the grandchildren were allowable as expenses of the estate under California law is the declaration of Michael Desmarais (counsel to Robert in the underlying proceedings) that payment of beneficiaries' fees by an estate  is "customary" and that it is "authorized by the laws of the State of California."  Desmarais Decl.¶ 6. Although attorney Desmarais likely is qualified to testify as to what is "customary" in local practice, the question of what is "authorized" under state law presents a question for the Court, not an evidentiary issue to be resolved by declarations.  Accordingly, based on the present record and briefing, the Court concludes that the fees incurred by Herbert and the grandchildren were not properly charged to the estate as administrative expenses and that, therefore those expenses are not deductible.[6]

    The Court has weighed whether that conclusion warrants an order granting *partial* summary

---

[5] The *Dulles* decision does not quote the language of the state statute.  The substance of former N.Y. Surrogate's Court Act, § 278, however, now appears at  N.Y. Surrogate's Court Procedure Act § 2302 (6).  See *In re Jacobsen's Estate*, 70 Misc.2d 355, 333 N.Y.S.2d 511 (N.Y.Sur. 1972) (noting recodification).  That section expressly permits "any person" to recover fees from the estate when incurred in "a proceeding to construe a will."

[6] The IRS points out that under the settlement agreement, each beneficiary's share of the estate was to be reduced by the amount of attorney fees he or she had incurred. In and of itself, this would appear not necessarily to preclude deductibility   See *Swayne* 43 T.C. at 199 ("expenses prorated against the shares of all devisees and legatees . . .are as much administration expenses of the estate as expenses deducted before distribution of an intestate estate.")  In one sense, however, it means that the estate effectively did not pay the attorney fees of the various parties. Looking at it that way arguably made the arrangement proper under California law, but then there would be no basis to claim a deduction.

8

1 judgment, as provided in subdivision (d) of Rule 56 of the Federal Rules of Civil Procedure.
2 Although the IRS did not move for partial summary judgment in the alternative, the rules authorize
3 courts to issue orders that specify, "the facts that appear without substantial controversy." Fed. R.
4 Civ. P. 56 (d). Here, however, the issue of whether Herbert and the grandchildren's fees are
5 properly charged to the estate appears to turn more on conclusions of law than on factual issues.
6 Given that, and given that the IRS did not identify the dollar amount of the claimed refund that
7 would be affected by a conclusion that Herbert and the grandchildren's fees are not deductible, the
8 Court declines to issue partial summary judgment.

9 Whether Margaret's fees were properly claimed as administrative expenses presents more
10 difficult questions. As the IRS acknowledges, Margaret was the named executor under the 2000
11 will. As such, she had a *duty* to offer it for probate unless, perhaps, she knew it to be invalid. The
12 probate court's tentative conclusion was that Margaret did *not* offer the will in bad faith. Thus,
13 although neither party has cited California law clearly on point, there is at least some basis for
14 arguing that her fees were properly charged to the estate.[7]

15 Robert's fees present the strongest case for Kessler's position. There is no dispute that he was
16 the executor under the 1994 will that was validated by the stipulated order that followed the
17 settlement. The IRS contends Robert was nonetheless not entitled to recover his fees from the estate
18 because, (1) only he stood to benefit by admission of the 1994 will to probate rather than the 2000
19 will, and (2) in the only part of the litigation that went to trial, he technically was *contesting* the
20 2000 will, not *defending* the 1994 will. As to the first point, there is some authority that where only
21 the executor stands to benefit from defending a will, the fees incurred in doing so cannot be charged
22 to the estate. *See*, *e.g. In re Higgins Estate*, 158 Cal. 355 (1910). The situation here, however,
23 appears to have been more complex. The estate could not have been administered absent a
24 determination as to which will governed. There were, apparently, reasons to believe there had been

---

[7] The Court declines to decide at this juncture whether the fact that the probate court tentatively rejected the 2000 will is dispositive. The California Probate Code may not be as unambiguous as the Connecticut statutes that fees can be allowed to an executor when the will is not ultimately admitted to probate, but the IRS has not clearly established that California law prohibits the recovery of fees from the estate in such circumstances.

9

undue influence, although the probate court ultimately noted that it had not been egregious in any event.

In this regard, *Sussman v. United States*, 236 F.Supp. 507 (D.C.N.Y. 1962) is instructive, even though it applied New York rather than California law. "If the test is benefit to the estate, the test ought not to be incapable of embracing the idea that achieving a correct result is beneficial to the estate." *Id.* at 509. Robert had a duty as executor under the 1994 will to offer it for probate and to defend it, absent reason to believe that it had been superceded by a valid will or otherwise revoked. In doing so, he was giving effect to Hawkins' last expression of her intent made with testamentary capacity, according to the probate court's tentative decision. Under these circumstances, the IRS has failed to show that the mere fact that Robert stood to benefit under the 1994 will precluded him from charging his fees to the estate.

The IRS's second point elevates form over substance. It may be true that the only portion of the underlying litigation that went to *trial* was technically a contest of the 2000 will, but that appears to be more a matter of procedural happenstance than otherwise. There is little doubt that the *substance* of the dispute from the outset through the trial and the settlement was the same: which will would be probated? The challenge to the validity of the 2000 will was part and parcel of the effort to defend the 1994 will. As such, the IRS has not established the impropriety of charging those fees to the estate.[8]

Finally, the IRS also argues that Robert's fees were unreasonable in amount and that the parties and the probate court failed to comply strictly with the statutory provisions governing the approval of fees based on a contingency agreement. The reasonableness of the fees claimed by Robert presents a factual issue not subject to determination in a motion for summary judgment. The

---

[8] As the IRS points out, for one period of time the California Probate Code set out a specific list of "extraordinary services" for which compensation could be claimed, including the successful defense of a will prior to its admission to probate. A similar provision now exists in Cal. Rules of Court, Rule 7.703 (c) (f). Notably, Rule 7.703 expressly provides that the list it contains is "nonexclusive." Thus, it appears that California courts have at least some discretion to award fees for extraordinary services falling outside the specific categories listed. Although that would not apply to the fees incurred by Herbert and the grandchildren as they were not executors, it may support the propriety of Robert's fees being charged to the estate even if his situation does not exactly "fit" any traditional category, and it may even have bearing on the propriety of the estate bearing Margaret's fees.

apparent failure to comply with the letter of the procedural requirements applicable to contingency-based fees does not, on this record, warrant a finding that the fees were therefore not allowable under California law as estate administrative expenses.

## V.  CONCLUSION

For the reasons set forth above, the motion for summary judgment is denied. The parties shall appear for a Case Management Conference at 2:30 p.m. on September 26, 2007.

IT IS SO ORDERED.

Dated: August 6, 2007

RICHARD SEEBORG
United States Magistrate Judge

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
C 06-07492 RS

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

Heather Halvorson Munoz     heather.munoz@berliner.com, llm@berliner.com

Jerold Alan Reiton     jerold.reiton@berliner.com, tammy.garcia@berliner.com

Frank R. Ubhaus     fru@berliner.com, cep@berliner.com, pstallings@berliner.com

Jay R. Weill     jay.weill@usdoj.gov

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

**Dated: 8/6/07**                                         **Chambers of Judge Richard Seeborg**

                                                          **By:      /s/ BAK**

United States District Court
For the Northern District of California

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
C 06-07492 RS